UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KHALED ABUBLAKAN,

      Petitioner,

v.

                                    Case No.:  2:26-cv-00808-SPC-NPM

WARDEN, ALLIGATOR
ALCATRAZ *et al*,

      Respondents,

_____/

## **OPINION AND ORDER**

Before the Court are petitioner Khaled Abublakan's Petition for Writ of Habeas Corpus (Doc. 1) and the government's response (Doc. 8).

Abublakan is a native of Saudi Arabia with a Palestinian passport who entered the United States on a F-1 visa in 1991.  Abublakan was convicted of battery in 1994, and an immigration judge ordered him removed on June 29, 1999.  In 2000, Abublakan was convicted of aggravated battery.  Following his released from prison, the Department of Homeland Security unsuccessfully requested travel documents from Saudi Arabia.  Immigration and Customs Enforcement ("ICE") released Abublakan under an order of supervision on March 14, 2003.  He was arrested for domestic violence in 2016, and ICE detained him again.  The government has been unable to remove him over the years, and he has been released from immigration custody under multiple orders of supervision—most recently on September 1, 2017.

On November 10, 2025, Immigration and Customs Enforcement ("ICE") arrested Abublakan at his home under a warrant of removal.  ICE requested a travel document from Saudi Arabia in December 2025 and is awaiting a response.  Abublakan argues his detention is unlawful because removal is not likely in the reasonably foreseeable future.

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final.  *Id.* Detention may continue after the removal period, but not indefinitely.

In *Zadvydas v. Davis*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."  533 U.S. 678, 700-01 (2001).  If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id.* at 699.  The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." *Id* at 701.  So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day

removal period plus an additional 90 days. *Id.* Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.

*Id.*

The respondents argue Abublakan's petition is premature because his current detention has not exceeded 180 days. They assume the six-month presumptively reasonable period of detention resets each time a noncitizen is detained. That assumption is inconsistent with *Zadvydas*. It would effectively allow DHS to detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every 180 days. As the Eleventh Circuit recognized, "[t]he Supreme Court's stated rationale for establishing a presumptively reasonable '6-month period' for detention pending removal supports our conclusion that this period commences at the beginning of the removal period." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Abublakan carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. The

government has been unable to remove him since 2002, despite what appears to be diligent efforts.  Multiple countries have declined to accept Abublakan, and there is no reason to believe that will change.  The burden shifts to the government.  It points to a pending request ICE made to Saudi Arabia, but that country has declined to issue Abublakan travel documents in the past. The Court finds no significant likelihood Abublakan will be removed in the reasonably foreseeable future.

However, assuring the presence of a noncitizen at the moment of removal is not the only statutory justification for immigration detention.  "The second justification—protecting the community—does not necessarily diminish in force over time." *Zadvydas*, 533 U.S. at 690.  The Supreme Court has "upheld preventative detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." *Id*.  Given Abublakan's criminal history, the Court will give ICE an opportunity to determine whether his detention is necessary to protect the community.

Accordingly, it is hereby

**ORDERED:**

Khalid Abublakan's Petition for Writ of Habeas Corpus (Doc. 1) remains under advisement.

1. Within 30 days of this Order, ICE shall conduct a custody review to determine whether Abublakan poses a danger to the community sufficient to justify continued detention.

2. Within seven days of the custody review, the respondents shall file a supplemental response, addressing the results of the review and any updates on removal efforts.

3. Abublakan may file a reply within three days of the supplemental response.

**DONE AND ORDERED** in Fort Myers, Florida on April 9, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record